## DAVIS *v.* STATE.

(In Banc. April 23, 1934. Suggestion of Error Overruled May 21, 1934.)

[154 So. 304. No. 31129.]

**Ross R. Barnett** and **D. C. Enochs,** both of Jackson, for appellant.

80

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a death sentence on a conviction of murder.

The deceased, Raftakes, was a small retail merchant doing business in the city of Jackson. On November 19, 1933, while he, his wife, Mary Raftakes, his daughter, and Pearl White, a nurse, were in Raftakes' place of business, according to the evidence, the appellant entered therein; Mary and the nurse then left the building, and according to the evidence of Mrs. Raftakes, the appellant asked the deceased to change a dollar for him. The deceased went to his cash drawer, in which there was forty-five dollars, and opened it, whereupon the appellant drew a pistol, shot Raftakes, took the money from the cash drawer, and 'departed. Mary and the nurse, who were only a short

distance away, heard the shot, returned immediately to the store of Raftakes, arrived while the appellant was still there, saw Raftakes on the floor and the appellant with the pistol in his hand taking the money. Other witnesses saw the appellant leave the building. When the police officers arrived on the scene some time after the homicide, they found an empty pistol cartridge on a counter near where the deceased was killed. Thereafter, on the same day, they arrested the appellant in the city of Jackson, in a room in a dwelling house occupied by the appellant and another. When the appellant was arrested he was taken outside the house, and three of the officers then went back to the room without the appellant, searched it, and found an automatic pistol between the mattresses of the bed therein, which appeared to have been recently fired, and which the empty cartridge found at the place of the homicide fitted. The chief of police testified that some time before the trial of the case was begun, he went into the courtroom, and the appellant, who was there, called him, saying he wanted to talk to him. Whereupon, he carried the appellant to a room adjoining the courtroom, who, among other things, then said to him, without any inducement whatever being held out to him so to do, that he was showing Raftakes the pistol and "it went off and killed him;" that he took the money, but did not know why he did so; and that he hid the pistol between the mattresses in the room where he was arrested.

The appellant denied making any confession to the chief of police, and his evidence, if true, established an alibi.

The assignment of errors complains of the introduction in evidence of the empty cartridge, the pistol and where found, the confession, and in the granting of two instructions for the state, and the refusal of the one instruction requested by the appellant.

The empty cartridge shell was clearly admissible in evidence.

We will not pause to inquire into the validity of the contention of the attorney-general that the objection to the introduction of the pistol, and the evidence of where it was found, was not seasonably made, for the evidence was admissible, even though we should hold that the objection thereto was seasonably made. The search was made immediately after, and as an incident to, a lawful arrest. That the appellant was not in the room when the search was made is of no consequence, for its does not appear that the contents of the room were, or might have been, changed in the interval between the appellant's arrest and the search. Cf. Millette v. State (Miss.), 148 So. 788.

The ground of the objection to the confession is that it was coerced. In support of this, evidence was introduced to the effect that the appellant was confined for two or three days in an unventilated, unlighted, unfurnished room, bare of furniture, six by ten feet in size, in a steam-heated building for the purpose of sweating a confession out of him. Had the confession resulted from this confinement, Ammons v. State, 80 Miss. 592, 32 So. 9, 18 L. R. A. (N. S.) 768, 92 Am. St. Rep. 607, would be of interest, but it is clear, from the evidence, that it was not coerced at all, but was, in every respect, free and voluntary.

One of the instructions for the state complained of charged the jury correctly that if they believed certain facts from the evidence, which, if true, constituted murder, "then it will be the sworn duty of the jury to return the following verdict, 'We, the jury, find the defendant guilty as charged.'" The complaint is that by this instruction, the jury were prohibited from fixing the appellant's punishment at life imprisonment.

Another instruction for the state, however, charged the jury as follows:

"That if you find the defendant guilty as charged you may return either of the following verdicts,

"1. 'We, the jury, find the defendant guilty as charged,' in which event it will be the duty of the court to sentence the defendant to be hanged; or

"2. 'We, the jury, find the defendant guilty as charged and fix his punishment at life imprisonment in the state penitentiary,' in which event it will be the duty of the court to so sentence him, or

"3. 'We, the jury, find the defendant guilty as charged, but cannot agree upon his punishment,' in which event it will be the duty of the court to sentence the defendant to the state penitentiary for life."

In Mathison v. State, 87 Miss. 739, 40 So. 801, 812, the first of these instructions, though accompanied by the second, was held erroneous; but the court said: "We might not reverse for this error alone; but we point out the fact that it is error, that it may be avoided in future trials."

In Mackie v. State, 138 Miss. 740, 103 So. 379, the two instructions, when read together, were held to correctly announce the law.

The other instruction is one that is frequently given, and reads as follows: "The court instructs the jury for the state that in trying this case you should not hunt for doubts with the view of finding any excuse or apology for your verdict, nor should you indulge in such doubts as are merely conjectural, but the doubts which ought to make you pause and hesitate must be reasonable doubts and they must arise out of the evidence or from the want of evidence in this case. You are not required, under the law of this state, to know that the defendant is guilty of the crime charged against him before you can convict, and you should not hesitate to convict him because you are unable to say, outside of the evidence, that he might have been innocent, but, after considering all of the evidence in the case, if you believe beyond a reasonable

doubt, from the evidence, that he is guilty, then you should not hesitate to find that he is guilty and discharge your duty under your oaths and under the law, and say so by your verdict.''

This court, while sometimes criticizing the instruction, has uniformly declined to reverse because of it. Smith v. State, 103 Miss. 356, 60 So. 330; Jones v. State, 130 Miss. 703, 94 So. 851; Harris v. State, 135 Miss. 171, 99 So. 754; Floyd v. State, 166 Miss. 15, 148 So. 226, 232; and Powers v. State (Miss.), 151 So. 730. The appellant points out one variation in this instruction from the usual form, and that is these words, ''You are unable to say outside the evidence,'' the usual form being, ''You are able to say outside the evidence.'' The use of the word ''unable'' was, most probably, an inadvertence, and could have no prejudicial effect on the appellant.

By the other instruction the appellant sought to have the jury charged that: ''if you should believe the defendant guilty, from the evidence, beyond a reasonable doubt, then the court further instructs you that the law will be as fully satisfied with the fixing of the punishment at imprisonment in the penitentiary for the life of the defendant as with the fixing of the punishment at the death of the defendant.'' This instruction was rightfully refused.

Affirmed. Sentence to be executed on Thursday, May 31, 1934.

**Anderson, J.,** dissenting.